**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

**MARIA LOUISE GIANNONE,**

    **Plaintiff,**

    v.

**KILOLO KIJAKAZI,
Acting Commissioner of Social Security,**

    **Defendant.**

Case No. 3:19-cv-19420
Magistrate Judge Norah McCann King

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Maria Louise Giannone for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further proceedings.

**I.    PROCEDURAL HISTORY**

On March 1, 2016, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging that she has been disabled since March 1, 2016, because

---

[1]Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in his official capacity.

of bipolar disorder, post-traumatic stress disorder ("PTSD"), depression, and anxiety. R. 478–88, 509. The applications were denied initially and upon reconsideration. R. 390–95, 400–05. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 406, 408–09. Administrative Law Judge Thomas J. Sanzi ("ALJ") held a hearing on October 12, 2018, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 293–335. In a decision dated October 23, 2018, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from March 1, 2016, Plaintiff's alleged disability onset date, through the date of the administrative decision. R. 275–86. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on August 26, 2019. R. 1–7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On August 27, 2020, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 15.[2] On August 28, 2020, the case was reassigned to the undersigned. ECF No. 16. The matter is now ripe for disposition.

## II. LEGAL STANDARD

### A. Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

---

[2] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018). Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account

whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482. Absent such articulation, the Court

4

"cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong

[Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

## B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

6

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 47 years old on her alleged disability onset date of March 1, 2016. R. 285. Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2021. R. 277. At step one, the ALJ found that, although Plaintiff had engaged in substantial gainful activity from March through July 2017, Plaintiff had not engaged in substantial gainful activity for at least 12-months during the period of her claimed disability, and the ALJ's decision therefore addressed that period. R. 278.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: ovarian and uterine cancer; degenerative disc disease; and bipolar disorder. *Id*. The ALJ also found that the following impairments were not severe: incisional hernia, obesity, and history of pulmonary embolism. *Id.*

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 278–80.

7

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 280–84. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a nurse assistant, medical secretary, and secretary. R. 284–85.

At step five, the ALJ found that a significant number of jobs–*i.e.*, approximately 91,000 jobs as a small parts assembler; approximately 337,000 jobs as an inspector and hand packager; approximately 41,000 jobs as an electronics worker –existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 285–86. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from March 1, 2016, her alleged disability onset date, through the date of the decision. R. 286.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 10; *Plaintiff's Reply*, ECF No. 14. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 13.

## IV. DISCUSSION

Plaintiff argues that the ALJ erred when crafting her physical and mental RFC. *Plaintiff's Memorandum of Law*, ECF No. 10, pp. 16–25; *Plaintiff's Reply*, ECF No. 14, pp. 1–3. Plaintiff specifically argues that the ALJ assigned "considerable weight" to the reviewing state agency psychologists' opinions, but then crafted a mental RFC that did not account for the limitations

identified in those opinions. *Plaintiff's Memorandum of Law*, ECF No. 10, pp. 20–23. Moreover, Plaintiff argues, the ALJ failed to explain his reasoning for doing so, thus depriving this Court of the ability to determine if substantial evidence supports the ALJ's findings. *Id*. This Court agrees.

A claimant's RFC is the most the claimant can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). At the administrative hearing stage, the administrative law judge is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c); 416.927(e), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer,* 186 F.3d at 429. However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

Here, the ALJ determined that Plaintiff had the RFC to perform a limited range of light work, as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967 (b) except that she can occasionally climb ladders, ropes, and scaffolds, stoop, and crouch. She is limited to simple, routine tasks. The claimant should be allowed to be off-task 5 percent of the workday, in addition to

9

regular breaks. *She should have only occasional interaction with the public and co-workers.*

R. 280 (emphasis added). In making this determination, the ALJ specifically considered the opinions of the reviewing state agency psychologists. R. 283–84, 336–55, 358–87. Thomas Plahovensak, Ph.D., conducted an initial review of Plaintiff's medical record on July 25, 2016, R. 336–55, and found , *inter alia*, that Plaintiff had moderate restrictions in her abilities to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. R. 342, 352. When considering the record evidence, Dr. Plahovensak explained as follows:

> T2/T 16 claims for a 47yof w allegations of a bipolar d/o, PTSD, depression, and anxiety. She had an IP psych admission to Riverview Hospital (3-3-16 to 3-8-16) d/t anxiety, depression, and feeling and bouts of impatience are also consistent w a bipolar d/o for which treatment was not received until recently.
>
> Preferred Behavioral notes (3-15-16 to 5-19-16) indicate clmt was cooperative, pleasant, and organized. MS indicates she is alert, oriented x3 and able to relate satisfactorily. Thought processes are goal directed and coherent. No delusions, racing thoughts, SI, HI, or psychotic sxs. Her insight and judgment were determined to be good because she was accepting her dx of a mood d/o. Clmt reported increased depression in mid May d/t breakup w a boyfriend. However, TS indicated that she did not evidence rage or loss of temper /control.
>
> ADLs indicate clmt can maintain her own schedule and tends to personal care. She had lived independently until financial problems caused her to return to live w her px. Her work hx indicates that she has held jobs for significant periods of time.
>
> The bipolar sxs have become more stable w the initiation of mood stabilizers; she had been resistant to taking them in the past. Attention and CPP are moderately limited, but adequate for performing simple, basic tasks. Clmt is able to adapt to changes in a work setting and understand and carry out simple directions. The limitations posed by the psych conditions are not so severe that they prevent clmt from maintaining attendance or meeting the demands of simple work-related activities w/in a low contact work environment.

R. 342–43, 353. Dr. Plahovensak opined that Plaintiff was not disabled but that she could not perform her past jobs of secretary, social worker, nurse assistant, and administrative clerk because she had the mental RFC to perform only "simple work-related activities w/in a low contact work environment." R. 344–45, 354–55.

Richard J. Hamersma, Ph.D., reviewed Plaintiff's medical record upon reconsideration for the state agency on November 23, 2016. R. 365–72, 380–87. Dr. Hamersma agreed with Dr. Plahovensak that Plaintiff had moderate restrictions in her abilities to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. R. 369, 384. Dr. Hamersma also agreed that "[t]he limitations posed by the psych conditions are not so severe that they prevent clmt from maintaining attendance or meeting the demands of simple work-related activities w/in a low contact work environment." R. 370, 385. Dr. Hamersma also concluded that Plaintiff was not disabled. R. 371, 386.

The ALJ gave "considerable weight" to these reviewing state agency psychologists' opinions, stating as follows:

> As for the opinion evidence, in July 2016, Thomas Plahovensak, Ph.D., the State agency psychological consultant, concluded that the claimant had adequate attention and concentration for simple, basic tasks, was able to adapt to changes in a work setting, and could understand and carry out simple instructions (Ex. 1A/8). Additionally, Dr. Plahovensak said that the claimant would do best in a low-contact work environment (*Id.*). On reconsideration in November 2016, Richard Hamersma, Ph.D., affirmed Dr. Plahovensak's assessment (Ex. 5A/13). I have given the opinions of the State agency psychological consultants considerable weight. Drs. Plahovensak and Hamersma reviewed all of the available evidence, and their opinions were based on that review, as well as their knowledge of the disability program and its requirements. Additionally, these opinions are consistent with the claimant's mental health treatment history, as discussed above.

R. 283–84.

Plaintiff complains, *inter alia*, that although the ALJ gave "considerable weight" to the reviewing state agency psychologists' opinions that she is able to work in a low contact work environment, the ALJ crafted a mental RFC that did not account for Plaintiff's limitations in accepting instructions and responding appropriately to criticism from supervisors. *Plaintiff's Memorandum of Law*, ECF No. 10, pp. 20–23. In response, the Commissioner does not expressly address this argument but rather insists only that "none of the mental status examination findings support any further limitation" as to supervisors. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 13, p. 22.

Plaintiff's argument is well taken. As Plaintiff observes, the reviewing state agency psychologists did not distinguish between Plaintiff's limitations in her ability to interact with the general public and coworkers on the one hand, and her limitations in her ability to interact with supervisors on the other. R. 342, 352, 369, 384. Although the ALJ assigned "considerable weight" to those opinions, the ALJ found an RFC that limited Plaintiff to "only occasional interaction with the public and co-workers." R. 280, 283–84. The ALJ included no limitation regarding Plaintiff's ability to interact with supervisors. Moreover, the ALJ failed to explain the inconsistency between this mental RFC determination and his acceptance of the reviewing state agency psychologists' opinions. *Id*. This inconsistency takes on even greater significance when one considers that the vocational expert, upon whose testimony the ALJ relied, was asked to assume a claimant able to, *inter alia*, have "[o]nly occasional interaction with the public[, o]nly occasional interaction with coworkers," but no limitation on Plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors. R. 285–86, 330–31. The ALJ's failure to include a limitation relating to supervisors and failure to include an explanation for this omission is not harmless. *See Matchett v. Comm'r, Soc. Sec. Admin.*, No. CV 18-134

(RMB), 2019 WL 581801, at *3 (D.N.J. Feb. 13, 2019) (remanding action where "[t]he ALJ's decision does not explain why the residual functional capacity determination omits any limitation on interactions with supervisors, even when the ALJ expressly gave 'significant weight' to the evidence that 'in a work setting [the claimant] would not be able to interact appropriately with the public, co-workers, and supervisors'") (citations omitted); *Capo v. Comm'r of Soc. Sec.*, No. CV 2:17-1280, 2018 WL 5982435, at *4 (W.D. Pa. Nov. 13, 2018) (remanding action where the "Plaintiff correctly argues that the ALJ's RFC finding [that limited the plaintiff, *inter alia*, to only occasional public interaction, but containing no similar restrictions as to Plaintiff's interactions with supervisors and/or co-workers] appears inconsistent with his acceptance of Dr. Marion's moderate limitations, specifically, the moderate limitation on interactions with supervisors and/or co-workers. Although the ALJ is entitled to reject limitations that are unsupported by the record, he must provide the reasons for discounting that evidence"). Accordingly, considering this inconsistency and the ALJ's failure to explain this omission, this Court cannot conclude that substantial evidence supports the ALJ's findings. *See id.*; *Jones v. Berryhill*, No. CV 17-119-E, 2018 WL 4627296, at *3 (W.D. Pa. Sept. 26, 2018) (remanding action where, *inter alia*, although the ALJ gave some weight to the findings and opinion of a consultative psychologist, the ALJ did not include in Plaintiff's RFC any accommodations regarding certain limitations and, "[a]lternatively, the ALJ does not explain why he found no need to include any such limitations in social functioning in Plaintiff's RFC"); *Sanford v. Comm'r of Soc. Sec.*, No. CIV. 13-0366 NLH, 2014 WL 1294710, at *2 (D.N.J. Mar. 28, 2014) ("The Third Circuit has held that access to the Commissioner's reasoning is [ ] essential to a meaningful court review.") (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

This Court therefore concludes that the decision of the Commissioner must be reversed, and the matter must be remanded to the Commissioner for further consideration of the opinions of the reviewing state agency psychologists and the RFC determination. Remand is appropriate, moreover, even if further examination of these issues again persuades the ALJ that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").[3]

## V. CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

---

[3] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of the reviewing state agency psychologists' opinions and the RFC, the Court does not consider those claims.

**IT IS SO ORDERED.**

Date:  July 12, 2021	              *s/Norah McCann King*         
                                                          NORAH McCANN KING
                                                   UNITED STATES MAGISTRATE JUDGE